OPINION OF THE COURT
Walter B. Tolub, J.
By this motion, this court is presented with the unique issue of whether a professional journalist’s disclosure of nonconfidential and subsequently unpublished information obtained during research of a news story constitutes a waiver of the protections afforded to journalists under Civil Rights Law § 79-h.
Background
This case arises out of the claim that defendants, Reverend Dr. James A. Forbes, Jr., the principal minister of the Riverside Church, and Frank Boone, an employee of the Church, circulated a copy of plaintiffs record of conviction for criminal mischief. Plaintiff claims that in October of 2002, copies of this document were given to members of the congregation and staff in an attempt to humiliate her and to intimidate her from further criticizing defendant Forbes’ management of the Church.
In July 2002 three months before defendants’ alleged distribution of the records pertaining to plaintiffs criminal conviction, Daniel Wakin, a reporter for the New York Times, wrote an article about defendant Forbes’ alleged mismanagement of Church funds. The article mentions plaintiff as being one of the Church congregants who had been critical of defendant Forbes’ management.
Mr. Wakin, as part of research for his story, conducted multiple interviews with Church officials and congregants. This included the simultaneous interview of defendant Forbes, as well as two other Church officials, Richard Stone and Bernard Wilson (affidavit of Daniel J. Wakin). Mr. Wakin also conducted two separate interviews of plaintiff. The interviews of plaintiff were conducted prior and subsequent to Mr. Wakin’s interview of defendant Forbes. It is plaintiffs contention that when Mr. *854 Wakin contacted her on the second occasion, he informed her that he had learned from defendant Forbes that she had been involved in a criminal proceeding, but that this information would not be included in his article because it was not relevant to the story.
In November 2002 plaintiff commenced the instant action. In January 2005 prior to the deposition of defendant Forbes, plaintiff served Mr. Wakin with a nonparty judicial subpoena. Plaintiff seeks, by way of the subpoena, testimony which plaintiff believes would establish defendant Forbes’ intent to use plaintiffs criminal record to “discredit and embarrass” her[1] (order to show cause, supporting affidavit of Constance GuiceMills, 1i 7). Mr. Wakin refused to testify, invoking his rights under Civil Rights Law § 79-h, and the instant motion seeking to compel Mr. Wakin’s testimony followed.
Discussion
Civil Rights Law § 79-h, otherwise known as New York’s Shield Law, protects professional journalists from contempt citations when they refuse to disclose information obtained by them during the course of their reporting (see also, Matter of American Broadcasting Cos., 189 Misc 2d 805 [Sup Ct, NY County 2001]). When the information obtained by the journalist is confidential, the privilege is absolute (Civil Rights Law § 79-h [b]). By contrast, if the information obtained is non-confidential in nature, the privilege afforded to the journalist is qualified, and the information gathered may be subject to disclosure. However, courts will only compel disclosure of nonconfidential information upon a showing that the information sought is (1) highly material or relevant; (2) critical or necessary to the maintenance of a party’s claim, defense, or proof of an issue material to that claim or defense; and (3) is not obtainable from any other source. This is the tripartite test established by the Court of Appeals in O’Neill v Oakgrove Constr. (71 NY2d 521 [1988]), later codified in 1990 as Civil Rights Law § 79-h (c).[2]
*855 In the absence of meeting this three-pronged test, the only-other way an individual may obtain nonconfidential information gathered by a professional journalist in preparation of a news story is if the moving party demonstrates that the journalist voluntarily disclosed or consented to disclosure “of the specific information sought to be disclosed to any person not otherwise entitled to claim the exemptions provided by this section” (§ 79-h [g]).
Plaintiff asserts three distinct arguments in support of the instant motion: (1) that the information plaintiff seeks does not constitute “news” and therefore is not protected by the Shield Law; (2) that even if the information sought constitutes non-confidential “news,” O’Neill and the tripartite test for compelling disclosure are inapplicable because the test is only applicable to “resource materials, and not testimony” (plaintiff’s reply mem of law, at 5); and (3) in any event, Mr. Wakin waived any protection that may have been afforded to him under Civil Rights Law § 79-h when he disclosed to plaintiff that he had learned from defendant Forbes during the Church officials’ interviews that plaintiff had been previously convicted (order to show cause H 6), thereby waiving the privilege (Civil Rights Law § 79-h [g]).
*856 Notwithstanding plaintiff’s arguments to the contrary, section 79-h of the Civil Rights Law defines “news” as being “written, oral, pictorial, photographic, or electronically recorded information or communication concerning local, national, or worldwide events or other matters of public concern or public interest or affecting the public welfare” (§ 79-h [a] [8]). It would be unreasonable for this or any other court to conclude that a criminal conviction would somehow fall outside of this definition, since at the very least, such information would be a matter of public concern or interest. As such, plaintiff’s first argument fails.
Plaintiff’s second argument which maintains that O’Neill and the tripartite test for determining whether to require disclosure of nonconfidential materials acquired by journalists during story preparation only applies to resource materials and not testimony also fails. Contrary to plaintiff’s claims, the Court of Appeals in O’Neill, a case which sought disclosure of photographs, did not define “resource materials” so as to explicitly exclude journalist testimony from either constitutional or statutory privilege. In fact, it did not define the term at all. What was emphasized was that with respect to the compelled disclosure of photographs, the tripartite test was “a compliment to the general principles governing compelled disclosure . . . Under our discovery statutes and case law, competing interests must always be balanced; the need for discovery must be weighed against any special burden to be borne by the opposing party” (O’Neill, 71 NY2d 521, 529 [1988]).
In the absence of civil case law to the contrary, it is this court’s opinion that O’Neill and the tripartite test are applicable to the instant case. A litigant in a civil case seeking testimony from a journalist about his news sources should be subject to the same balancing test required of any other resource material. To hold otherwise would subject journalists in this state to litigation over every story deemed worthy of reporting and would not only excessively burden, but would jeopardize the autonomy of the free press. As such, in the absence of meeting the requirements of the tripartite test, which plaintiff in this action has not,[3] this court will not, in the absence of evi *857 dence of waiver, compel a journalist to testify about his resource materials.
This brings this court to what is perhaps plaintiffs most compelling argument in support of the instant motion: that Mr. Wakin waived any protections that might have been afforded to him under the Shield Law when he voluntarily disclosed to plaintiff that he had learned about her criminal conviction from defendant Forbes during the interview with the Church officials.
Were this an issue of whether or not a journalist waives the Shield Law by fact checking sources to ascertain the veracity of information used in news reports prior to publication, this court would not find waiver, as a journalist has an obligation to check their sources prior to publishing an article. Anything less would likely render them liable in a court of law.
However, under Civil Rights Law § 79-h (g), it is possible for a professional journalist to waive the exemption of the Shield Law if they voluntarily disclose or consent to disclosure “of the specific information sought to be disclosed to any person not otherwise entitled to claim the exemptions provided by this section.” Plaintiff asserts that this happened in the instant case, and this court is inclined to agree.
Notwithstanding the validity of Mr. Wakin’s arguments, the fact remains that Mr. Wakin, during an interview, learned from defendant Forbes that plaintiff had been previously convicted. That nonconfidential information was protected by section 79-h (c). However, when Mr. Wakin voluntarily informed plaintiff of the specific information he learned from that interview, he waived any protection he might have had under the statute with respect to the limited information shared. As such, while Mr. Wakin is subject to the subpoena compelling his testimony, the scope of the questioning is strictly limited to what was said by Mr. Wakin to plaintiff, and what or who the source of the information was. If plaintiff wants additional information with respect to the *858 remainder of Mr. Wakin’s article research, plaintiff must meet the tripartite test requirements.
Accordingly, it is ordered that plaintiffs motion seeking the deposition of Mr. Daniel J. Wakin is granted to the limited extent as set forth in this decision; and it is further ordered that said deposition shall be held at a mutually agreeable time and location, but not later than 60 days after service of a copy of this order with notice of entry.

. The court notes that, to date, defendant Forbes has not yet been deposed.

. The complete text of this subdivision is as follows:
“(c) Exemption of professional journalists and newscasters from contempt: Qualified protection for nonconfidential news. Notwithstanding the provisions of any general or specific law to the contrary, no professional journalist or newscaster presently *855 or having previously been employed or otherwise associated with any newspaper, magazine, news agency, press association, wire service, radio or television transmission station or network or other professional medium of communicating news to the public shall be adjudged in contempt by any court in connection with any civil or criminal proceeding, or by the legislature or other body having contempt powers, nor shall a grand jury seek to have a journalist or newscaster held in contempt by any court, legislature, or other body having contempt powers for refusing or failing to disclose any unpublished news obtained or prepared by a journalist or newscaster in the course of gathering or obtaining news as provided in subdivision (b) of this section, or the source of any such news, where such news was not obtained or received in confidence, unless the party seeking such news has made a clear and specific showing that the news: (i) is highly material and relevant; (ii) is critical or necessary to the maintenance of a party’s claim, defense or proof of an issue material thereto; and (iii) is not obtainable from any alternative source. A court shall order disclosure only of such portion, or portions, of the news sought as to which the above-described showing has been made and shall support such order with clear and specific findings made after a hearing. The provisions of this subdivision shall not affect the availability, under appropriate circumstances, of sanctions under section thirty-one hundred twenty-six of the civil practice law and rules.”

. Notwithstanding plaintiffs assertion that Mr. Wakin’s testimony is necessary “to provide important evidence concerning the identity of the persons responsible for distribution of the embarrassing document” (order to show *857 cause 11 7), it is obvious to this court upon review of the papers, that plaintiff has not established the three-part test evincing materiality, relevance, and need as required by Civil Rights Law § 79-h (c). Nor has plaintiff demonstrated that her claim “virtually rises or falls with the admission or exclusion of the proffered evidence” (Matter of Grand Jury Subpoenas [National Broadcasting Co.], 178 Misc 2d 1052, 1058 [Sup Ct, NY County 1998]).